IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUANITA WILSON,

        Plaintiff,                No. CIV S-06-1631 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.         <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

1

I. Factual and Procedural Background

        In a decision dated April 26, 2005, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of schizoaffective disorder, bipolar type, alcohol dependence and polysubstance abuse in remission, history of lower back pain due to lumbar strain, and asthma, but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff cannot perform her past relevant work; plaintiff has the residual functional capacity to perform a significant range of medium work; using Medical-Vocational Rule 203.29 as a framework for decision-

---

        [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
        Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
        Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
        Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1  making, there are a significant numbers of jobs in the national economy plaintiff can perform;

2  and plaintiff is not disabled.  Administrative Transcript ("AT") 30.  Plaintiff contends the ALJ

3  improperly rejected the implicit opinion of a treating psychiatrist and examining physician,

4  improperly discredited her testimony and that of a laywitness, and should not have relied on the

5  Medical-Vocational Guidelines in finding plaintiff not disabled.

6  II.  Standard of Review

7           The court reviews the Commissioner's decision to determine whether (1) it is

8  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11  Substantial evidence means more than a mere scintilla of evidence, but less than a

12  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21  substantial evidence supports the administrative findings, or if there is conflicting evidence

22  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25  1335, 1338 (9th Cir. 1988).

26  /////

3

III.  Analysis

    A.  Physicians' Opinions

        Plaintiff contends the ALJ improperly rejected the implicit opinion of her treating psychiatrist regarding her mental functional capacity and the opinion of an examining physician regarding her physical functional capacity.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

        The ALJ correctly noted that the record contains no opinion from a treating mental health professional regarding plaintiff's mental functional capacity.  AT 26.  Plaintiff

1   contends, however, that her treating psychiatrists implicitly opined that she had limited mental

2   functional capacity because she was assessed repeatedly with a GAF[2] of 45.  This contention is

3   meritless.  The treating psychiatrist made no assessments with respect to work functions and the

4   GAF does not correlate to the severity assessments utilized in Social Security disability

5   determinations.[3]  With respect to the GAFs of 45, impairment in the inability to work is only one

6   example of the level of adaptation meriting such a rating.  There is no indication in the record as

7   to which aspect of functioning formed the basis of the assessed GAFs.  AT 357, 366, 369.

8   Moreover, the ALJ expressly considered plaintiff's GAFs and reasonably concluded the reported

9   GAF in January 2004 was not necessarily indicative of plaintiff's level of functioning at that

10  time, a conclusion supported by the record and also reached by the state agency physician.

11  AT 26, 357, 401, 432.  In light of the opinions of Dr. Joyce, who examined plaintiff in 2004, and

12  the state agency psychiatrist, who had current records from plaintiff's mental health treatment

---

[2]  GAF (Global Assessment of Functioning) is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.

[3]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.

Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information."  To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

1    available for review, the ALJ did not err in his assessment of plaintiff's mental functioning.[4]

2    AT 343-348, 397, 401.

3            Plaintiff also challenges the ALJ's rejection of the residual functional capacity

4    assessed by Dr. Mattos, who performed an internal medicine evaluation in December 2003.

5    AT 339-342.  The ALJ properly rejected Dr. Mattos's  limitations as inconsistent with the

6    examiner's findings and the lack of evidence in the record of any physical complaints that would

7    limit plaintiff to the degree assessed by Dr. Mattos.  AT 27, 340-341, 413-419.

8        B.  Credibility

9            Plaintiff contends the ALJ improperly discredited her testimony.  The ALJ

10   determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

11   if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

12   94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

13   credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

14   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

15   supported by "a specific, cogent reason for the disbelief").

16           In evaluating whether subjective complaints are credible, the ALJ should first

17   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan,

18   947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an

19   impairment, the ALJ then may consider the nature of the symptoms alleged, including

20   aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The

21   ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent

22   statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to

23   seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily

24   activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P,

25

26       [4]  The time period at issue commences October 30, 2003.  AT 21.

6

61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third

party testimony about nature, severity and effect of symptoms, and inconsistencies between

testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d

789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical

problem may be a valid consideration by the ALJ in determining whether the alleged associated

pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d

1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see

Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without

affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for

rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of

Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified that her main disability was mental, not physical.  AT 439.

Plaintiff testified, however, that she could walk only three blocks, stand for 20 minutes, sit for

only 30 minutes and could lift only twenty pounds.  AT 438.  The ALJ found plaintiff's claim of

physical disability not credible because of the inconsistency of her testimony with that of her

written statements regarding her daily activities, the lack of objective findings by the examining

physician, and the lack of treatment for severe pain.  AT 26-28, 264-268, 309-313, 340-341.  The

ALJ discounted plaintiff's claim of mental disability because of the inconsistency of her

testimony when compared to the treating records and psychiatric examination, which indicated

normal concentration, attention and tracking during the period under adjudication.  AT 26, 344-

347, 423, 428, 431, 432, 440, 444.  The ALJ also factored into the credibility analysis plaintiff's

claim of sobriety at the same time the examiner noted plaintiff smelled of alcohol.  AT 28, 344.

The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

Plaintiff also contends the ALJ improperly disregarded the testimony of her

boyfriend, who provided laywitness statements on third party questionnaires.  AT 270-278, 300-

7

308.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."  <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>see also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill</u>, 12 F.3d at 919; <u>see also</u> <u>Stout v. Commissioner SSA</u>, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached different disability determination).

It is apparent from the ALJ's decision that he considered the statements of plaintiff's boyfriend because he took specific note of the boyfriend's comment that if plaintiff went shopping, she could do it all day.  AT 28, 273.  Except for this brief reference, however, the ALJ did not specifically discuss the laywitness statements of plaintiff's boyfriend.  The court concludes, however, that such omission is harmless because even if the boyfriend's reports are fully credited, no reasonable ALJ would have reached a different disability determination.  <u>See</u> <u>Stout v. Commissioner SSA</u>, 454 F.3d at 1056.  Although the boyfriend's statements indicate plaintiff is scared and does not socialize much with people, the statements are consistent with the residual functional capacity determined by the ALJ, which limited plaintiff to performing simple one- or two-step instructions with limited public contact and avoidance of concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  AT 30, 272, 273, 303, 304.  There was no error in the ALJ's implicit conclusion that this laywitness testimony does not support plaintiff's allegations of disability.

C.  Medical-Vocational Guidelines

Plaintiff also contends the ALJ erroneously relied on Grid Rule 203.29 to find plaintiff not disabled.  The Medical-Vocational Guidelines ("the grids") are in table form.  The

1   tables present various combinations of factors the ALJ must consider in determining whether

2   other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring).

3   The factors include residual functional capacity, age, education and work experience.  For each

4   combination, the grids direct a finding of either "disabled" or "not disabled."

5          There are limits on using the grids, an administrative tool to resolve individual

6   claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

7   testimony of a vocational expert only when the grids accurately and completely describe the

8   claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

9   also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

10  may rely on the grids, however, even when a claimant has combined exertional and nonexertional

11  limitations, if nonexertional limitations are not so significant as to impact the claimant's

12  exertional capabilities.[5]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

13  other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen,

14  864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

15  (requiring significant limitation on exertional capabilities in order to depart from the grids).

16         The ALJ properly used Grid Rule 203.29 (medium level, unskilled) as a

17  framework for decision-making in finding plaintiff not disabled.  See Young v. Sullivan,

18  911 F.2d 180, 185 (9th Cir. 1990) (permissible for ALJ to rely on the Guidelines as a framework

19  for decision making).  The finding that plaintiff can perform unskilled work at the medium level

20  of exertion is supported by substantial evidence.  AT 27, 30, 133-140, 213, 216, 397, 413-420.

21

22       [5]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
     lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b); SSR 83-10, Glossary; compare
23   Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir. 1989).
            Non-exertional activities include mental, sensory, postural, manipulative and
24   environmental matters that do not directly affect the primary strength activities. 20 C.F.R.
     § 416.969a (c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404,
25   subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to
     work without directly affecting his or her strength, the claimant is said to have nonexertional (not
26   strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953,
     958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1    The ALJ specifically relied on Social Security Ruling 85-15, which notes that unskilled jobs

2    ordinarily involve dealing primarily with objects, not people, and that an inability to work around

3    excessive amounts of dust or other pulmonary irritants does not significantly erode the

4    occupational base.  AT 29.  The ALJ also noted that the regulations notice 1,600 separate

5    sedentary and light unskilled occupations.  Id.; 20 C.F.R., pt. 404, subpt. P, app. 2 § 202.00.  An

6    additional 900 unskilled occupations are noticed at the medium level.  Social Security Ruling

7    83-10.  Under these circumstances, the ALJ properly relied on the grids, which administratively

8    notice a significant number of jobs available to plaintiff.

9          The ALJ's decision is fully supported by substantial evidence in the record and

10   based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

11          1.  Plaintiff's motion for summary judgment or remand is denied, and

12          2.  The Commissioner's cross-motion for summary judgment is granted.

13   DATED:  September 30, 2007.


                                        _____
                                        U.S. MAGISTRATE JUDGE



006
wilson.ss


                                        10